CHARLEY REED *v.* THE STATE.

1. CHARGE OF THE COURT. — It is incumbent on the court, in every trial for felony, to give in charge to the jury the law applicable to every deduction which they may draw from the evidence.

2. SAME. — Note circumstances in proof in a trial for murder, and recapitulated in the opinion, from which the jury might have inferred "adequate cause" for the sudden passion which mitigates culpable homicide from murder to manslaughter, and which, therefore, imposed upon the trial court the duty of giving in charge to the jury the law of manslaughter as part of the law applicable to the case.

APPEAL from the District Court of Cook. Tried below before the Hon. J. A. CARROLL.

The opinion of the court will be found to state the case as fully as there is any occasion for.

*Sarlls & Snider*, for the appellant.

*Thomas Ball*, Assistant Attorney-General, for the State.

WHITE, P. J.    Appellant and one Amanda White were jointly charged by indictment with having murdered one Frank White, in Cook County, on the seventeenth day of March, 1880.    A severance was had at the trial, on the motion of Amanda White, and the defendant, Reed, at the election of the county attorney, was placed upon trial, which resulted in a conviction of murder in the second degree, with his punishment assessed at thirty years in the penitentiary.

Upon the appeal from the judgment rendered in the court below, as it is presented to us here in the record, there is but a single question necessary, in our opinion, to be determined, and that is, whether the court should have given the defendant the benefit of a charge upon the law of manslaughter, in view of the facts in the case.    As given, the charge only embraced the law of murder in the first and second degrees, and self-defence.

Without pretending to give the evidence in full, or even as it appears in the statement of facts, with reference to this question, we will, as concisely as possible, summarize the testimony bearing upon it.

Amanda White was the wife of Frank White, the deceased, but, from some cause not appearing in the record, the parties had separated, and at the time of, and for some time before the homicide, were and had been living in different houses.    There was testimony going to show that for some weeks before the killing the defendant had been living with Amanda at her house, and sleeping in the same room ; other testimony that he was living there as an ordinary boarder.    Threats had been made by deceased against defendant, and on the night of the homicide, there was testimony to show that on account of certain of these threats which had just been communicated to him, and the further fact that he had learned the deceased was coming to Amanda's house that night, defendant proposed to get his things and leave, because, as he said, he wished to have no trouble

with deceased.  This Amanda would not allow him to do, assuring him that she would not permit deceased to interfere with him or come into the house ; and she was heard to bolt the door, the defendant protesting against it.  Afterwards the parties retired, and nothing more is heard until the two shots from defendant's pistol.  A policeman who heard the shots, and who was one of the first to reach the spot, found the door of the house shattered "as though it had been struck by lightning," and recognized on the trial a stick that he understood was discovered and picked up in the house.  Frank White was found lying upon the bed on the floor, where defendant was in the habit of sleeping, dead, with two bullet-wounds in his body.

Now, if from this statement of facts the jury could have arrived at the conclusion that Frank White broke down the door and entered the house with a stick or club in his hand, with intent to kill or seriously injure defendant, and that defendant, actuated by his terror or anger, and in immediate apprehension of, or to prevent serious bodily injury then being or about to be inflicted upon him, fired the fatal shots and killed his assailant — in such an event they would have been warranted in finding him guilty of no higher offence than manslaughter.  For manslaughter, as defined by our Code, "is voluntary homicide committed under the immediate influence of sudden passion arising from an adequate cause, but neither justified nor excused by law."  Penal Code, art. 593.  "By the expression 'adequate cause' is meant such as would commonly produce a degree of anger, rage, sudden resentment, or terror in a person of ordinary temper, sufficient to render the mind incapable of cool reflection."  Id., art. 595.  And it is expressly declared that "an assault and battery by the deceased, causing pain or bloodshed, or a serious personal conflict, in which great injury is inflicted by the person killed, by means of weapons or other instruments of violence, are adequate causes" to reduce a voluntary homicide from murder to manslaughter. Id., art. 597.

We do not wish to be understood as intimating that the jury would or should have found manslaughter from this state of facts under an appropriate charge. What we desire to be understood as declaring is, that if it was probable that such would have been their verdict, then the charge should have been given. In his charge, the judge is required to "distinctly set forth the law applicable to the case." Id., art. 677. And "it is expected that the judge, upon due consideration, shall anticipate the conclusion as to the facts to which the jury might properly arrive from the evidence before them, and instruct the jury as to what combination of such facts, if proved to their satisfaction, would amount to the offence charged in the indictment, and what combination of such facts (if they existed) would excuse or justify the defendant, or establish his innocence. And if the evidence pointed to different conclusions of fact, tending to establish different degrees of the offence (as the jury might give credence to one or the other version of the evidence where it was variant or conflicting), then the judge should instruct the jury as to what fact or combination of facts would mitigate the offence to a lower degree or to lower degrees which might be embraced in the indictment." *Marshall* v. *The State*, 40 Texas, 200; *Reynolds* v. *The State*, 8 Texas Ct. App. 412.

It is not necessary that we should examine or decide upon any of the other errors submitted, since they are of a character not likely to arise on another trial. Because of error in the court in not submitting manslaughter in the charge to the jury as part of the law applicable to the case, the judgment will be reversed and cause remanded for a new trial.

*Reversed and remanded.*